# Robert H. Gilliford *v.* Allegheny City School District, Lewis McMullen et al., Appellants.

[Marked to be reported.]

*School law—Deposit of school fund in bank—Discretion of directors in Allegheny county—Act of April* 16, 1870.

Under the act of April 16, 1870, P. L. 1219, which requires the board of controllers of the school district of Allegheny city to deposit all school funds under their control in a bank to be selected by them " for the highest rate of interest they can obtain on current daily balances of such deposits," the controllers cannot, in the exercise of their discretion, refuse to deposit money in a bank of good standing which offers to pay interest on deposits, and give the deposits to a bank which refuses to pay interest, but offers, in consideration of the deposits, to lend the school district a large sum of money, without interest, if it should need to borrow.

If the exercise of discretion relates to the time or manner of discharging a duty imposed by law this is a proper field for the use of a discretionary power. If it relates to the duty itself and results in a refusal to discharge it, this is an abuse of discretion, and amounts to inexcusable disobedience of the law.

Argued Nov. 6, 1894. Appeal, No. 248, Oct. T., 1894, by defendant, from decree of C. P. No. 2, Allegheny Co., April T., 1894, No. 933, on bill in equity in favor of plaintiff. Before STERRETT, C. J., WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Bill to restrain school controllers from depositing school funds in a certain bank.

From the record it appeared that, in 1894, four banks made bids to secure the deposits of school funds of defendant school district. The German National Bank offered to pay two and one quarter per cent interest on current daily balances. The First National Bank agreed to pay one and one half per cent interest, and the Third National Bank agreed to pay one per cent interest. The Second National Bank refused to pay any interest, but agreed to lend to the school district $50,000 without interest, if it should need to borrow. On March 6, 1894, the board of controllers selected the said Second National Bank as the depository of the school funds.

The court entered the following decree through EWING, P. J

· " And now, to wit, May 23, 1894, this cause came on to be heard on bill, answer, replication and testimony taken in open court, and was argued by counsel, whereupon, upon consideration thereof by the court, it is ordered, adjudged and decreed that the selection of the Second National Bank of Allegheny on March 6, 1894, by the board of controllers of Allegheny City School District, as the depository of school funds under their control for the ensuing year is illegal, null and void.

" And it is further ordered, adjudged and decreed that the board of controllers of the School District of Allegheny City shall proceed, within thirty days after notice hereof to its president, to select a bank or banking institution with which to deposit all school funds under their control; and, in so doing, they shall, in a reasonable manner, by advertisement or other notice to such banks or banking institutions which they may deem safe and convenient, invite full and fair competition so as to receive from the bank or banking institutions selected the highest rate of interest they can obtain on current balances of such deposits, under the provisions, terms and conditions provided in the act of April 17, 1870, P. L. 1219, entitled, 'An Act enlarging the powers of the board of controllers of Allegheny School District in Allegheny county.'

" And it is further ordered, adjudged and decreed that the costs of this proceeding, to be taxed by the prothonotary, be paid by the board of controllers of the Allegheny City School District."

*Error assigned* was among others above decree, quoting it.

*Richard B. Scandrett* and *Thomas M. Marshall, Rody P. Marshall* and *W. B. Rodgers* with them, for appellant.—The selection, terms, restrictions, and conditions are all committed, by the act of 1870, P. L. 1219, to the discretion of the board of controllers. The act of March 29, 1872, is mandatory. The courts deal liberally with discretionary powers: Kline v. Directors, 2 Lanc. L. R. 321 ; Heard v. Directors, 45 Pa. 95 ; Pittston School Directors, 6 Luz. L. R. 84; Bowers v. School Board, 2 Pears. 227 ; Wharton v. Directors, 42 Pa. 364 ; Freeman v. Directors, 37 Pa. 386.

If the act of 1870 leaves no discretion with the board, then

the board would be compelled to select a bank that it might know to be insolvent because it offered to pay the highest rate of interest on current balances.

That the contract made by the board of controllers with the Second National Bank is a wise and prudent exercise of their undoubted discretion is not open to question, unless fraud or dishonest exercise of power is alleged and proven.

The position that the general act of May 8, 1854, is repealed by the local act of April 16, 1870, is untenable, there being no such repugnance between the two acts as would justify that conclusion: Com. v. Erie R. R., 98 Pa. 182; Contested Election, 86 Pa. 392; Williamsport v. Brown, 84 Pa. 438.

*D. F. Patterson* and *James H. Reed,* *P. C. Knox* with them, for appellee.—If the directors refuse to perform their duties the court can compel them. If they transcend their powers the court can restrain them. If they misjudge their powers the court can correct them. But if they exercise their unquestionable powers unwisely, there is no judicial remedy : Wharton v. Directors, 42 Pa. 364.

The act of 1870 plainly contemplates competition after due and fair notice: Mazet v. Pittsburg, 137 Pa. 561.

Under the provisions of the act of 1870, the authority of the board of controllers is limited to the selection of a bank or banking institution from which " they can obtain " the highest rate of interest on current balances. If the bidder offering the highest rate of interest is a sound and reputable banking institution, ready to furnish satisfactory security and comply with all conditions of the law, and, in addition, is conveniently located, the board has no power under the law to reject its bid and select a depository offering a less rate or no rate.

OPINION BY MR. JUSTICE WILLIAMS, Jan. 7, 1895 :

The question raised on this appeal may be broadly stated thus : What is the line of distinction that separates a proper use of official discretion from an abuse of it ? A duty was imposed upon the board of controllers of the Allegheny City School District by the act of 16th April, 1870, which the complainant alleges they have not discharged. They insist on the other hand that they have exercised their official discretion as to the

manner in which the directions of the act should be carried into effect, and have done that which to them seems to be a sufficient compliance with its command. It is therefore important to note, (*a*) the duty which the act of 1870 imposed on the board of controllers; (*b*) the acts of the board alleged to amount to compliance with the law; (*c*) the difference between what the law required and what the respondents have done under it; (*d*) the effect of such difference upon the carrying into execution of the legislative intent.

Under the general school laws the treasurer of the school district was the custodian of all school funds, and all disbursements were made by him. If he deposited these funds with some bank willing to pay interest on daily or weekly balances, he regarded the interest paid as a perquisite of his office, and as belonging to him not as an officer but as the individual who held the office. The act of 1870 was intended as a remedy for this evil. It made it the duty of the board of controllers of the school district of Allegheny city to deposit all school funds under their control in a bank to be selected by them, " for the highest rate of interest they can obtain on current daily balances of such deposits," taking from such bank sufficient security to indemnify the district against loss of the money so deposited. The object of this provision was to secure to the treasury, instead of the treasurer, the benefit of the interest which the funds of the school district might fairly earn while on deposit in the bank selected. It was not some interest, or the average rate, but the " highest rate " they could obtain, that they were to secure for the benefit of the taxpayers. Obedience to the statute required an effort made in good faith to ascertain what was the " highest rate of interest they could obtain; " and an effort made in like good faith to obtain that rate of interest on current daily balances for, or in consideration of, the deposit in the selected bank of " all school funds under their control."

We inquire next what the board of controllers did? They ascertained that the German National Bank would pay two and a quarter per cent interest on current daily balances; that the First National Bank would pay one and one half per cent and that the Second National Bank would pay nothing. They then proceeded to select the Second National Bank as the place for the deposits of all school funds under their control. They

admit the solvency of the banks offering interest whose propositions they reject, and give as a reason for their action that the bank selected offered to loan the district money if it should need to borrow, to the extent of fifty thousand dollars without interest. It does not appear that any such need is anticipated or has been encountered in years gone by. It is not contemplated by the act of 1870.

What are the differences between the line of conduct enjoined by the statute and that pursued by the board of controllers? The statute made the selection of the bank of deposit to depend on the payment of interest on current daily balances. The controllers here made it depend on the possibility of a loan being needed at some time during the school year. The statute, in letter and in spirit, required that " the highest rate " of interest they could obtain should be secured in aid of the district. The controllers have declined all offers of interest and selected a bank that gave distinct notice that it would not pay interest on current balances. They ascertained where they could make their deposits " for the highest rate of interest they could obtain on current daily balances ; " and then they declined to select the bank making this offer, and offering likewise ample security for the safe keeping of the money, because of the offer of a loan that the statute did not contemplate, which they tell us they thought of more consequence than the interest which it was the sole purpose of the statute to secure.

We inquire finally what is the effect of these differences between the legislative command and the official obedience shown by the respondents, on the execution of the legislative intent? Clearly it is to thwart it. The controllers have substituted their intent for that of the law makers. The latter said the selection of the bank of deposit must depend on the interest paid upon the school funds. The controllers say " not so, but a promise to lend us money, if we need it, without interest, shall determine the selection." The lawmakers said you must get " the highest rate of interest you can." The controllers say " in the exercise of our discretion we will refuse interest altogether." This is, as we have already said in substance, a violation of the statute, a setting of the official discretion of the board of controllers above a plain unmistakable command of the lawmaking power. Official discretion may

be exercised as to the time and manner of the performance of an act when these are not prescribed by the statute; but if it also included the right to obey or disobey the law at pleasure, then official discretion would be the supreme power in the state, and law would degenerate into mere advice. The law requires school directors to provide suitable school houses for the accommodation of children within the proper age desiring to attend the public schools. The location, the cost, the materials, the style of architecture, and the manner of furnishing such school houses, are left to the discretion of the board, but whether the law shall be obeyed at all is not a matter of official discretion, but of official duty the performance of which the courts will enforce. The law requires the employment of a sufficient number of competent teachers. What number will be sufficient, what standard of competency shall be adopted, what amount of experience, if any, shall be required of applicants, are questions to be decided in the exercise of a sound official discretion, but a refusal to employ teachers of any sort is simple disobedience of the law.

The test by which the use may be distinguished from the abuse of discretionary power is thus seen to be the relation of the thing done to the thing required. If the exercise of discretion relates to the time or manner of discharging a duty imposed by law, this is a proper field for the use of a discretionary power. If it relates to the duty itself and results in a refusal to discharge it, this is an abuse of discretion, and amounts to inexcusable disobedience.

In the case before us the mandate of the law to the board of controllers was "obtain for the benefit of the district the highest rate of interest on deposits you can, and deposit with that bank that will pay the highest rate and give you adequate security for your money." The answer of the board is "We will do no such thing. We know better what we need than the legislature does. It is not interest on deposits, but possible accommodations by way of advancements, that shall determine our selection of a bank to be the custodian of the funds under our control."

The learned judge of the court below was quite right in holding that this was a decision not at all justified by official

discretion, and that it was a clear violation of a plain statutory direction.

The decree is affirmed. The costs of the appeal to be paid by the appellants.